Klochinski vs. Shores Lumber Co.

KLOCHINSKI, Respondent, vs. SHORES LUMBER COMPANY, Appellant.

*May 4 — May 22, 1896.*

*Master and servant: Personal injuries: Negligence: Special verdict: Proximate cause: Failure to warn servant of risk: Fellow-servants: Vice-principal.*

1. A question submitted for special verdict, "Was the defendant guilty of negligence, *or* a want of ordinary care, *or* such care as persons or corporations of ordinary care ordinarily use, which was the proximate cause of the plaintiff's injury," is objectionable in form; and an affirmative answer thereto does not show that actionable

93  417
97  286

93  417
100  680
101  536

93  417
104  813

93  417
105  846

93  417
107  260

93    417
110   ² 51
54 LRA  98n

93    417
112   ¹ 54

93    417
s114  ¹ 32
114    453
114   ¹480

negligence of the defendant was the proximate cause of the injury, where it remains uncertain whether the negligence imputed to defendant was negligence of a co-employee of plaintiff, or the failure of defendant to warn him of the danger of the employment, and, if the latter, whether the defendant knew or ought to have known that such warning was necessary.

2. The fact that an employee was injured because he was inexperienced and ignorant of the dangers of the work in which he was engaged, does not make the employer liable unless the latter knew or ought to have known of such inexperience and ignorance and of such danger, and failed to instruct or warn the employee.

3. The superintendent and manager of a sawmill who, as a volunteer, undertook to do the work of an employee who had been disabled, and called another employee to his assistance, was a fellow-servant of the latter in the performance of such work, and whatever orders or directions he gave while engaged therein are to be regarded as orders and directions of a fellow-servant and not of a vice-principal.

4. But if the superintendent in such case negligently and improperly directed such other employee to engage in such work without giving him necessary or proper warning or instruction as to its dangers, for the lack of which said employee was injured, this must be regarded as the negligent act of the employer, for which it would be liable.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This was an action to recover damages sustained by the plaintiff by reason of the alleged negligence of the defendant while in its employ as a laborer in its steam sawmill. The mill is a double mill, and the logs are brought into it over live rollers by a chain with brads which pierce the logs and haul them up on a log deck, on each side of which the carriages run upon which the logs are placed and carried forward to the saw. The carriage and saw on each side, forming a double mill, are supplied with logs from the log deck, and the machinery for handling the logs and sawing runs with great speed. A man is employed on the log deck who stands there and throws the logs, as they come in, down an incline to the carriages, with levers operating ma-

chinery for that purpose, and when a log is thrown onto the carriage it is controlled and handled by means of a steam trip or jigger operated by the sawyer with his foot. The work of handling the logs on the log deck and carriage is required to be done in a quick manner, so as to keep out of the way of the machinery, and the plaintiff alleged that it was a hazardous and dangerous employment, even to experienced hands, and was known to be such by the defendant.

On the day of the injury the log-deck hand had become disabled, and John W. Murray, the defendant's superintendent and general manager (and who was joined as a defendant with it), took the plaintiff, as he alleges, from his work in the shingle mill, to assist him (Murray) on the log deck, knowing the plaintiff to be without experience, skill, or knowledge in that work, well knowing its dangerous character, and without informing the plaintiff of or explaining the same to him, and when this machinery, steam trip, and jigger were out of repair and defective, and suffered and directed the plaintiff to assist him (Murray) on the log deck. It is alleged that Murray used the lever and threw a log down the incline to the carriage in a careless and negligent manner, one end in advance of the other, so that it swung around and failed to catch on the carriage properly, when the jigger operated by the sawyer caught the log near its middle, instead of the end, and threw it around suddenly, without warning, and with great force and violence, striking the plaintiff on his leg, knocking him down, breaking his right leg, and inflicting on him other injuries, etc.; that the injury was caused without the fault of the plaintiff, and wholly by reason of " the fault, neglect, and wrongful acts of the defendants in putting the plaintiff to work in such danger without informing him thereof, and in allowing said machinery to be so out of repair and defective, and in the said Murray carelessly, negligently, and wrongfully throwing said log down the incline in an irregular manner as aforesaid."

It was admitted by the answer that the defendant Murray was the superintendent in charge of, operating, and running the mill of the defendant company, that the mill was constructed and operated substantially as stated, and that the plaintiff was injured while at work therein at the time stated; but it was alleged that his injury was caused by his own carelessness and neglect, and not by the carelessness or neglect of either of the defendants, and, save as admitted, all other allegations of the complaint were denied.

At the trial before a jury, evidence was given on the part of the plaintiff tending to show that he had worked for the defendant for over two summers in and about the mill and shingle mill, and just before his injury he was at work in the shingle mill; that Murray called him to work on the log deck, and gave him the cant hook, and Murray was then handling the levers on the log deck by which the logs were shot up onto the deck; that he straightened two logs before he got hurt; that the log was lying crooked on the deck; that Murray told him to go and straighten it, and when he was doing this the sawyer kicked the log with the jigger, and the log was thrown over against him, breaking his leg; that he had never worked at that kind of work before. Murray did not explain that it was dangerous, but the evidence tended to show that he had seen and observed how the work was done. The evidence was that the work on the log deck was usually done by one man, who handled the levers that operated the steam kicker, a device by which logs were thrown from the chain, as they came in, to the carriage on either side; that the plaintiff did not use this lever at all, but that Murray was there using it, and the plaintiff only used the cant hook to straighten the logs around, and Murray directed him to straighten the log when he got hurt; that the sawyer ought to have been looking to see that he was not in the way when he tripped the jigger. And the evidence also tended to show that it was not safe to go down on the log deck to straighten a log without first sig-

naling the sawyer so that he might not throw the jigger up; that it was usual to signal him, although he probably would be in view of the sawyer in going down on the deck; that it would be dangerous for any man who had never had any experience to be put to work on the log deck. The defendant moved for a nonsuit, but it was denied.

The defendant Murray testified that he and the plaintiff, at the time of the injury, were together doing the work of one man on the log deck, and that he called the plaintiff up to roll logs or straighten them, and he worked the lever to throw them upon and down the log deck on either side; but he denied that he gave him any direction or indication in respect to the log which injured him. He called him to help witness for the time being, and did not leave the entire work with him, for the reason that the device that throws the logs off from the live roll either one way or the other worked very fast and by steam, and he was afraid to trust it in his hands, for fear he would break it, and so stayed to handle it himself. That he did not signal the sawyer, when the plaintiff went down near the log, not to raise the jigger; that the sawyer could see the man who stands on the log deck when he wants to by looking around the column, and the man who handles the levers on the log deck can step around sidewise and see the sawyer. This man and the sawyer communicate by motions sometimes. To do so they will step a little to one side. That he could have signaled the sawyer not to have thrown the log if he had wanted to. He insisted that he did not order the plaintiff to straighten the log, and that there was nothing to signal the sawyer for; that he volunteered without any instructions from him; that it was not his business to go there, and he did not know he was going there, and for that reason did not apprise him of its being dangerous. Had not given him any instructions what to do. Had him there to roll down any logs that got crooked, and to straighten the logs.

The sawyer testified that he did not see the plaintiff when he was hurt; that from where he stood he had no view of his side of the log deck, excepting of the first log down at the bumpers, unless he stepped around the column; that if the man at the lever on the log deck signaled to him, he would have to step down about six feet from his place to see; that he never had any one signal to him, while he worked in the mill, that they were coming down on the deck, and not to raise the jigger; that he would have thrown the log just the same if he had seen the plaintiff, for he would have expected him to be off at the end of the deck. Murray could not signal him from where he stood at the levers. No man could do so.

Considerable evidence was given showing the length of time the plaintiff had worked in and about the mill, and his opportunities for observing the nature and method of doing the work on the log deck, and how dangerous it was, and his knowledge on that point. It appeared that the man who did the work on the log deck had got injured in the morning, and Murray went to fill his place, and he called or motioned to the plaintiff in the shingle mill, on the same floor, in the lower part of the mill, about twenty feet distant, where he was working, to come and help him; that when he got on the log deck with Murray the latter took the cant hook and indicated to him to roll the logs; that he was there half or three quarters of an hour before he was injured; that Murray, the superintendent, and the plaintiff were filling the place of one man.

At the close of the evidence the defendant asked the court to direct a verdict in its favor, which was denied; but, on motion, the court dismissed the action as to the defendant Murray. The jury found a special verdict, to the effect, among other things, that the defendant furnished the plaintiff with a reasonably safe place to work, and with reasonably safe appliances with which to work at the time of his

injury, and that he was not injured by reason of any failure in this respect, or because the mill, machinery, or appliances got or remained out of repair. It was found: (1) That the defendant did not, through its foreman or any of its agents, warn the plaintiff of any danger in performing the work required. (2) That the plaintiff did not tell the defendant or its agents that he was familiar with the particular kind of work he was doing when injured. (3) That the plaintiff did not know, nor could he by using reasonable diligence have learned of and comprehended, the dangerous character of the work he was doing when injured. (4) To the question, "Was the defendant guilty of negligence, *or* a want of ordinary care, *or* such care as persons or corporations of ordinary care ordinarily use, which was the proximate cause of plaintiff's said injury?" the jury answered in the affirmative, and also found that the plaintiff was not guilty of any contributory negligence, and fixed his damages at $500. The plaintiff had judgment on the special verdict, from which the defendant appealed.

For the appellant there was a brief by *Tomkins & Merrill*, and oral argument by *George H. Merrill*.

For the respondent there was a brief signed by *O'Keefe & Copeman*, attorneys, and *Dockery & Kingston*, of counsel, and oral argument by *E. J. Dockery*.

PINNEY, J. 1. The special verdict is so defective that it does not warrant or support the judgment. The special question above quoted is certainly unique, but, with its answer, is wholly inadequate to show that actionable negligence of the defendant was the proximate cause of the plaintiff's injury. After a manifestly strenuous effort at certainty of statement and clearness of definition, it still fails to comply with the well-settled rule requiring questions to be submitted to be single, direct, and plain questions. *Carroll v. Bohan*, 43 Wis. 218, 221. A verdict must be cer-

tain, at least to a common intent, and must directly, fairly, and fully respond to the material issues in the case, so as to stand as a final and unequivocal decision of the matter with which it deals. *McGowan v. C. & N. W. R. Co.* 91 Wis. 147, 157. The question is compound, and, while calling for an affirmative answer, it is in the alternative. " Was the defendant guilty of negligence, *or* a want of ordinary care, *or* such care," etc., " which was the proximate cause of the plaintiff's injury?" The question was framed in objectionable terms, and the verdict as a whole is fatally defective for uncertainty, and for that it does not extend to and cover a material part of the issue, in respect to which the evidence was conflicting. It is uncertain whether the negligence imputed to the defendant was the negligence of the superintendent, Murray, or of the sawyer, both of whom, it will be seen, were at the time to be regarded as the fellow-servants and co-employees of the plaintiff, or whether this finding relates to the failure of the defendant to warn the plaintiff of any danger in performing the work required of him, and of which it was found he was wholly ignorant. If it relates to the latter, these findings are defective in that they do not find an indispensable part of the issue, namely, that the defendant, " well knowing the plaintiff to be without skill and knowledge of the work, and well knowing its dangerous character," failed to so inform the plaintiff. Here the verdict fails on the question of proximate cause, for, unless the defendant knew or ought to have known of some occasion for information or instruction on this point, its neglect to impart any could not be regarded as the proximate cause of any injury that ensued to the plaintiff for want of such information or instruction. The mere fact that he was injured because he was inexperienced and ignorant of the danger and hazard would not suffice to charge the defendant.

2. The plaintiff, in his testimony, imputes negligence to the sawyer as being an efficient cause of his injury; but, if

this was established, it would have been the negligence of a co-employee or fellow-servant in a common employment of the same master, and would furnish no ground of action against the latter.   The same holds good, we think, as to the alleged negligence of Murray, the superintendent and manager of the defendant company.   Whether he is to be considered as a vice-principal of the defendant, or a co-employee and fellow-servant of the plaintiff, depends, not upon Murray's grade or rank, but upon the work being performed by him and the plaintiff at the time.   The evidence is quite clear that Murray took hold at the time as a volunteer to do the work on the log deck in place of one just disabled, and he called the plaintiff to assist him in doing it.   This was no part of Murray's duty as superintendent or manager, and it would seem that he and the plaintiff, in any view that can fairly be taken of the case, must be regarded as co-employees and fellow-servants of the defendant, engaged in a common employment.   Whatever order or direction Murray gave to the plaintiff after he commenced the work on the log deck, and while working there with Murray, must be regarded as the order or direction of a co-employee or fellow-servant and not of the vice-principal of the defendant.   *Dwyer v. Am. Exp. Co.* 82 Wis. 307; *Stutz v. Armour,* 84 Wis. 623; *Kliegel v. Weisel & V. Mfg. Co.* 84 Wis. 148; *Hartford v. N. P. R. Co.* 91 Wis. 374.   But if Murray, as superintendent and vice-principal, negligently and improperly directed the plaintiff to work on the log deck with him, without giving him necessary or proper warning or instruction as to the danger and hazard of working there, for the lack of which he got injured, this must be regarded as the negligent act of the defendant, for which it would be liable.

For these reasons the judgment of the circuit court is erroneous.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.