McMahon vs. Ida Mining Co.

McMahon, Appellant, vs. Ida Mining Company, Respondent.

*February 3—February 23, 1897.*

*Master and servant: Negligence.*

The "shift boss" in a mine, whose business it is to direct miners where to work, in performing that duty acts in the capacity of master or vice-principal, and if such boss knows of a concealed danger, such as an unexploded blast, at the place where he sets a miner at work, of the existence of which the latter is ignorant and unable with ordinary care to ascertain, and does not inform him thereof, the master is liable for an injury to such miner caused thereby.

Appeal from a judgment of the circuit court for La Fayette county: Geo. Clementson, Circuit Judge. *Reversed.*

This is an action to recover for personal injuries received by the plaintiff while at work as a miner in the defendant's lead and zinc mine, by the discharge of a dynamite blast under circumstances which, it is alleged, established actionable negligence on the part of the defendant. The gist of the complaint is that the plaintiff was set to work by a shift boss in a certain part of the mine where there were con-

cealed unexploded blasts known to the shift boss, but not to the plaintiff; and that plaintiff, in ignorance of the danger, while drilling and preparing for a blast, was injured by the explosion of one of the concealed blasts. The facts appearing by the plaintiff's evidence were substantially as follows: The defendant's mine is about 100 feet below the surface of the ground, in solid rock, the mining being carried on in drifts of varying width and height. Holes were drilled in the forehead of the drift by steam power. These holes were then charged with dynamite, which was exploded by electricity, several such blasts being frequently discharged simultaneously. These holes were sometimes drilled so deep that the explosive power of the dynamite was insufficient to rend the rock and the force of the explosion was not observable at the mouth of the hole. Such holes in which a blast had been fired, but had not apparently rent the rock, were called "butts" or the "butt end" of a hole. The plaintiff was an experienced miner, and had worked for defendant about a month prior to the accident in question.

The evidence showed that one Thomas Cadden was also in the employ of the company at the time of the accident, and was what was termed a "shift boss." The duties of the shift boss appear to be to direct the men in the mine where to work. The shift boss was called as a witness, and testified that on the 1st of July, 1894, he loaded six holes in the forehead of a certain drift with dynamite, and endeavored to explode the same by electricity; that there were three holes that had wires sticking out of them after the blasts had been fired, and that this was evidence that the charges in the holes had not exploded. The evidence further showed that no further work was done at this place in the mine until the 17th day of July following, at which time the shift boss placed the plaintiff and one Hugh Cadden at work at the forehead in question. The plaintiff

testified that he did not hear the shift boss say anything about unexploded blasts, but his fellow laborer says that the shift boss said that there were two unexploded blasts there, and that they must look out for them. The two workmen found two holes, which had wires sticking out of them, and concluded that they were the unexploded blasts, and they carefully scraped up the tamping, put in some additional dynamite, and fired them. The testimony tends to show that no other holes in that vicinity had wires sticking out of them. After firing these two blasts, the plaintiff and his fellow workman quit work for the day, and returned on the following day to the same place. There were several butts of holes in the forehead in the immediate vicinity, and the evidence tends to show that there was no way of distinguishing a butt of a hole (that is, a hole in which a blast had been fired without apparent result) from a hole in which no blast had been fired. The plaintiff and his fellow workman, finding a hole without any wires sticking out of it, concluded that it had been fired unsuccessfully, and proceeded to scrape out the contents of it so far as possible, and, finding it in the proper place for a blast, started to drill it deeper. This hole was in fact the hole containing the unexploded blast. After drilling for a time the dynamite in the hole exploded, seriously injuring plaintiff. Upon these facts the plaintiff was nonsuited, and appealed.

For the appellant there was a brief by *Orton & Osborn* and *J. B. Simpson,* and oral argument by *P. A. Orton.*

For the respondent there was a brief by *Spensley & Mc-Ilhon* and *Aldro Jenks,* and oral argument by *Calvert Spensley* and *Mr. Jenks.* They contended that the duty of the " shift boss " did not involve any contract obligation of the master, but he was a mere fellow-servant of the miner. *Dwyer v. Am. Exp. Co.* 82 Wis. 307–310; *Stutz v. Armour,* 84 id. 623; *Crispin v. Babbitt,* 81 N. Y. 516; *Mancuso v.*

*Cataract Const. Co.* 87 Hun, 519; *Flynn v. Salem,* 134 Mass. 351; *Loughlin v. State,* 105 N. Y. 159, 163; *Hussey v. Coger,* 112 id. 618.

WINSLOW, J. The nonsuit is attempted to be justified on the ground that the shift boss was a co-employee, and that thus the plaintiff's injury resulted from the negligence of a co-employee. There is little or no dispute as to the principles of law on the subject, but the difficulty is in the application of the law. In *Cadden v. Am. Steel Barge Co.* 88 Wis. 409, it is correctly said: "In *Dwyer v. Am. Exp. Co.* 82 Wis. 307, it was held that the question whether different employees of the same master are to be regarded as fellow-servants in a common employment depends upon the nature of the act in the performance of which the injury was inflicted, without regard to the rank of the negligent servant, and that the master is not liable unless the negligent act pertained to a matter in respect to which he owed a direct duty to the servant injured." So the question here is simply whether the shift boss, Cadden, in sending the plaintiff to work in a new part of the mine, where there was a concealed danger of which he (the shift boss) knew, but the plaintiff did not, was performing a duty of the master. A master is bound to furnish the servant a reasonably safe place in which to work, considering the nature of the work. He is not to set a man at work among latent and extraordinary dangers, of which the employee knows nothing, and which he cannot ascertain by experience or observation. In taking the plaintiff from one part of the mine in which he had been at work and setting him at work in a different place, the shift boss was plainly and palpably acting in the capacity of master. The evidence tends to show that he knew of a concealed and terrible danger in the place, of which he did not inform the plaintiff, and that the plaintiff could not, in the exercise of ordinary care, ascertain the existence of that

danger. We entertain no doubt of the sufficiency of this evidence to take the case to the jury. Further evidence may perhaps show that the risk was a common and ordinary one in a mine of this character, and so was assumed by the plaintiff, or that the plaintiff should have known from the appearance of the hole that it contained the unexploded blast, but neither of these facts now appears so clearly that the court is justified in taking the case from the jury.

*By the Court.*— Judgment reversed, and action remanded for a new trial.