Adams, Administratrix, Appellant, vs. Snow and others, Respondents.

*February 8 — February 27, 1900.*

*Master and servant: Injury: Proximate cause: Negligence of fellow-servant: Practice: Directing verdict after nonsuit.*

1.. Plaintiff's intestate, while working for defendants at the bottom of a mine shaft, was struck and fatally injured by a descending ore tub.   Upon the evidence — showing, among other things, that the tub was hoisted by a horse led by a boy; that to control its descent it was the boy's duty to unhook the end of the rope from the singletree and hook it to the hame and then to lead the horse toward the mouth of the shaft; that on the occasion in question the horse had escaped from the boy after the rope had been unhooked, and the employee at the top of the shaft started the tub down the shaft without looking to see that the end of the rope was attached to the hame, and was unable to prevent its falling — it is *held* that the proximate cause of the accident was not the incompetency of the boy, if he was in fact incompetent, to manage the horse, nor the insufficiency of the hoisting apparatus, but the negligence of the co-employee at the top of the shaft, and hence that there could be no recovery.

2. It is not error to direct a verdict for defendant immediately after announcing that a nonsuit is granted.

Appeal from a judgment of the circuit court for Iowa county: Geo. Clementson, Circuit Judge.   *Affirmed.*

For the appellant there was a brief by *T. L. Cleary, E. C. Fiedler*, and *Orton & Osborn*, and oral argument by *P. A. Orton.*

For the respondents there was a brief by *Spensley & McIlhon*, and oral argument by *Calvert Spensley.*

Cassoday, C. J.   This action was commenced September 4, 1897, to recover damages for an injury to the plaintiff's intestate and husband, sustained May 15, 1896, by reason of the alleged negligence of the defendants, while he was in their employ, and from which injuries he died June 8, 1896.

The defendants answered by way of admissions, denials, and counter allegations. A trial being had, the court, at the close of the plaintiff's testimony, at first granted a nonsuit, and immediately thereafter directed a verdict in favor of the defendants. From the judgment entered thereon the plaintiff brings this appeal.

The evidence in the record is undisputed and to the effect that the defendants were operating a mine and taking out sulphur at the time in question; that the deceased, Frank Adams, was forty-five years of age and an experienced miner, and had worked for the defendants for some time in the mine in question; that the mine was about forty-five feet deep, and the ore was taken therefrom up through a perpendicular shaft or opening; that the manner of so taking ore from the mine was by means of a long rope, with a tub fastened at one end, and passed over or upon two pulleys fastened to a large white-oak tree some six or eight feet above the mouth of the shaft; that the tub, upon being let down the shaft to the bottom, where the deceased was stationed, was filled by him with about 100 pounds of sulphur; that when so filled he would give a signal to Fred Branger, stationed on the surface of the ground at the opening of the shaft; that Fred would thereupon signal the boy, Charles Jackson, who was managing the horse hitched to the other end of the rope, and he would lead the horse along the track extending outward toward the northwest until the tub full of ore from the mine reached the top of the shaft and high enough for Fred to run the tram (a four-wheeled wagon with wheels eight or ten inches in diameter) under it, and then Fred would say "Whoa," and unhook the rope from the tub, and run the tram with the tub upon it out some thirty-two feet from the mouth of the shaft, and empty the ore therefrom, and then return the same on the tram to the mouth of the shaft, and again hook the end of the rope to the tub; that in the meantime it was the duty of the boy, when the

tub reached the top of the shaft and was placed upon the tram, to unhook the end of the rope from the singletree of his horse, and turn the horse around, and then hook the end of the rope in the hame of the horse, and then, after the tub had been emptied and returned to the mouth of the shaft, and the hook fastened to it, as stated, and Fred had dropped the tub in the shaft, to lead the horse toward the mouth of the shaft, so as to hold the tub steady as it passed down to the bottom of the shaft, when it would again be filled by the deceased, and taken up and unloaded, and returned to the mouth of the shaft and let down, as before.

At the time in question it appears that after the tub had reached the top of the shaft and was placed upon the tram and the rope unhooked from it, and after the boy had unhooked the rope from the singletree of the horse, some fifty feet from the mouth of the mine, the horse went off some thirty or forty feet into the brush, and the boy after him; and, before he could get the horse and return him to his end of the rope, Fred, after having said " Look out " to the deceased as usual, dropped the tub down the shaft, with nothing to prevent its falling, except his own unsuccessful efforts when he discovered that the other end of the rope was not attached to the hame of the horse as usual.   The tub so let down fell from the top to the bottom of the shaft, and struck the deceased, who unfortunately was under the area of the shaft, instead of being outside as he might have been.

Fred's testimony as to how he came to let down the tub without knowing that the other end of the rope was not attached to the horse's hame is to the effect that he neglected to look and see where the horse was before letting the tub down, as he should have done; that as soon as he found out that the tub had got loose he grabbed the rope with his right hand and held his weight with his left, or he would have gone down the shaft with the tub; that there was no system of signals between him and the boy at the

time; that he would look, so as to know when he dropped the tub, but at that time he neglected to do so; that it occurred by his not looking at that time to see whether the horse was attached to the rope,— by his not seeing to it that the horse was attached to the rope; that the boy had time to perform his work while he was unloading; that there was no system of signals by which he could tell whether the rope was attached to the hame, only by his looking; that he generally looked, not always,— did not at that time; that he could not tell whether the horse and boy were in sight when he let the tub down; that he was facing the shaft all the time, and did not look over that way to see whether the horse and boy were there or not; that if he had looked the accident would not have occurred; that if he had looked it never would have occurred; that he did not look; that he was thirty-one years of age, and had worked for the defendants since the March previous, and at the particular work in question for two or three weeks.

The accident occurred between 10 and 11 o'clock in the forenoon.   It manifestly occurred by reason of Fred Branger's negligence, which is frankly admitted.   The plaintiff does not claim any right to recover by reason of such negligence, as Fred was at the time the co-employee of the deceased; and there is no claim of negligence in employing him to do such work.   Notwithstanding the admitted negligence of such co-employee, yet it is contended that if the injury was in part the result of the negligence of the defendants in employing a boy not quite twelve years of age at the time of the accident, and hence incompetent to manage the horse and unhook the rope from the singletree and attach it to the hame, then that the defendants are liable. Such is undoubtedly the law.   This court has held that there is a presumption that a boy of such tender years is incompetent to perform duties involving the personal safety of others.   *Molaske v. Ohio C. Co.* 86 Wis. 220.   But the evi-

dence seems to indicate that the boy properly performed his duties. The horse was no more liable to start off into the brush than he would have been if a man had been managing him. The boy could not hook the rope to the hame until he got the horse back to the end of the rope. But assuming that a man would have been more vigilant and kept control of the horse, and that the boy was incompetent, yet it is very manifest that such incompetency was not the proximate cause of the injury. On the contrary, it conclusively appears that the proximate cause of the injury was the negligence of Fred, the co-employee of the deceased.

Error is assigned because the court did not submit to the jury the question of the insufficiency of the hoisting apparatus. But it clearly appears that the injury was not the result of any such insufficiency. It was the result of the admitted negligence of a co-employee, as stated. Certainly such negligence was the sole, proximate cause of the injury.

There was no error in directing a verdict for the defendants immediately after announcing that a nonsuit was granted.. *Portance v. Lehigh Valley C. Co.* 101 Wis. 574, 582.

*By the Court.*— The judgment of the circuit court is affirmed.