BAUMANN, Respondent, vs. C. REISS COAL COMPANY, Ap-·
pellant.

*May 15—May 29, 1903.*

*Master and servant: Personal injuries: Negligence: Proximate·
cause: Unsafe place· to work: Evidence: Appeal and error:·
Framing special verdict: Fellow-servant: Vice-principal: In-
structions to jury: Damages.*

1. Plaintiff, while at work at defendant's coal dock assisting in
   removing coal from under a trestle, was injured by the falling
   of the structure under the following circumstances. A large
   piece of coal incrusted by ice, on being loosened by a fellow-
   workman, rolled against one of the posts supporting the·
   trestle, causing it to ·move out of place at the top, and the
   structure thereupon fell. Shortly before there had been a fire·
   which had so destroyed the top of the post that the cap no
   longer held it in place, and defendant's foreman had, before
   the accident, examined the trestle and must have seen the
   damaged condition of the post in question. *Held*, that the jury
   were warranted in finding that the defendant, through its,
   proper representative, knew, before the accident, that plaint-
   iff's working place was unsafe.

2. It is not error for the trial court to so frame a special verdict
   as to cover all the facts vital to the cause of action and de-
   fense, whether controverted on the evidence or not, and, if the
   result is to inform the jury how particular questions must be
   answered to enable plaintiff to recover, that is the result of
   the law, not the abuse of it.

3. In an action for injuries sustained by a servant while shoveling
   coal, caused by the fall of a trestle, the evidence showed that
   the defendant's foreman, who had examined the trestle after
   a fire two weeks previous to the accident, had full charge of·
   the work; that defendant had left to him the duty of providing
   a safe working place for the men, and that he was not per-
   sonally engaged with them in removing coal. *Held*, that the·
   foreman was a vice-principal in respect to the safety of the·
   trestle, and all other matters affecting the character of the
   working place in which he placed plaintiff.

4. In such case, it appeared, and was so found by the jury, that
   while the immediate cause of the fall of the trestle was the roll·
   ing of a large body of coal against it, yet such an occurrence
   was one to be reasonably expected under the circumstances.,

and that it would not have injured the trestle had the effects of the fire been repaired. *Held*, that the jury were warranted in finding that the negligence of the foreman in not acquainting the plaintiff with the fact that the trestle was not secure, or otherwise remedying the danger, was the proximate cause of the accident.

5. In an action by a servant, working on a coal dock, for injuries caused by the falling of a trestle, it appeared, among other things, that a fire having weakened the top of one of the supporting posts, a large block of coal loosened by a fellow-workman rolled against the post, knocking it down, and thereby causing the trestle to fall. The court submitted to the jury the question: Was the defective condition of the trestle the proximate cause of the accident? On such question the court instructed the jury, in substance, that an affirmative answer required them to first find that the plaintiff's working place, to the knowledge of defendant, was unsafe for a sufficient length of time before the accident to have enabled defendant to have protected him therefrom by the exercise of ordinary care; that the fall of the trestle was the natural and probable consequence of such unsafe condition, and that the consequent injury to some one of defendant's servants, in the light of attending circumstances, was an event which, in the exercise of ordinary care, by one circumstanced as defendant, was reasonably to be apprehended. The jury found all such essentials of responsible causation. *Held*, that it was not necessary for the jury to answer other questions as to whether some act of a fellow-servant, or some other circumstance, was the producing cause of the injury.

6. A servant was injured about his neck, back, and head. There was evidence of circumstances indicating that he was rather weakminded before the injury; that his condition was worse to a considerable degree thereafter, opinion evidence that he suffered considerable mental impairment as the result of his injuries, and that such condition was progressive in character. *Held*, that it could not be said, as a matter of law, that the jury were not warranted in assessing damages upon the theory that plaintiff's mind was injured by the negligence complained of.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action to recover damages for a personal injury. January 19, 1901, plaintiff, a laborer twenty-six years of age, while working for defendant upon its coal dock, assisting in the re-

moval of coal from under a trestle that had been weakened by fire, was injured by the structure falling, one of the timbers striking him, breaking his right arm, bruising one of his feet and other parts of his body, particularly his head, the latter injury causing some mental impairment. Plaintiff's claim was that the defendant knew that the trestle was unsafe and permitted plaintiff, without warning him of the danger, to work in the vicinity thereof, where he was liable to be injured by the trestle falling, and that he pursued his employment with due care up to the time the injury occurred. Defendant's claim was that the trestle was not dangerous; that no conditions were known to it or reasonably chargeable as within its knowledge, rendering the trestle unsafe before it fell, and that the accident was caused by the negligence of plaintiff and his fellow-servants in that they loosened a large lump of coal from the top of the coal pile, which was under the track of the trestle and around the supports thereof, causing the same to roll down and strike one of the supports near where they were working, by reason whereof the trestle fell and plaintiff was injurd.

There was evidence undisputed or tending to prove thus: There was a fire upon the coal dock which commenced December 31st and lasted some time. There was a long coal shed on the dock, in which was stored the stock of hard coal. Such shed was totally destroyed. In the open yard was a trestle from the top of which soft coal was dumped upon the surface of the dock, and such trestle was so injured that a portion of it had to be taken down. The trestle was some over sixteen feet high, made of ten by ten posts set about twenty feet apart both ways, with cross-timber caps and two lines of three by ten inch plank placed on edge parallel with each other at right angles with the caps, the planks being fastened together, forming the bed of the tram track on which coal cars were conveyed to the point where it was desired to dump coal upon the dock. On the day of the injury plaintiff

and others were at work removing coal from the pile near the point up to which the trestle had been removed. The top timber of the section of the structure where the work was in progress was heavily loaded with ice, and had been for some days, caused by water being thrown thereon at the time of the fire and freezing. The caps on top of the posts of the trestle were fastened by spikes. They were not mortised to the posts. The construction was such that if the top of a post became burned, causing the spikes to loosen their hold upon the cap, a heavy chunk of coal rolling down from the top of the coal pile against such post was liable to displace it, allowing the superstructure to fall. Some time before the accident defendant's foreman examined those parts of the trestle claimed upon the trial to have been weakened by fire so as to render it dangerous. He had full opportunity to see all the defects that existed. He was the person relied upon by the defendant to look after the safety of the working place of the men. The top of the post near where plaintiff was working was partly destroyed by fire. The destruction was such that the cap no longer held it firmly in place. It was no part of plaintiff's business to observe that. The foreman was relied upon to look after such matters. The timbers were so discolored by fire and so covered with ice that the condition of the top of the post which gave way could not readily be seen from the place where the plaintiff was working when the trestle fell. Some days before the accident he had assisted in removing that part of the trestle that was taken down.

The evidence tended to show that the immediate circumstances of the accident were these: One of plaintiff's associates, by direction of the foreman or in the performance of his regular duties, loosened a large piece of coal and ice from a point near the top of the pile. It rolled down, striking the trestle post which was damaged by fire, whereupon it moved out of place at the top, allowing the superstructure to fall. As it fell plaintiff was struck by one of the timbers, break-

ing the radius of his right arm, inflicting three scalp wounds on his head, injuring somewhat one of his ankles, and injuring, to some extent, his neck and back. He was treated for his injuries in a hospital for a period of three weeks, subsequent to the accident. There were indications of some considerable injury to the brain as a result of the direct injury to the neck, back, head and nervous system. There was no discoverable fracture of the skull.

The cause was submitted to the jury for special verdict. They found, in effect, that at the time of the accident the trestle was unsafe to the knowledge of defendant's foreman, Roth; that such condition was the sole proximate cause of the accident, and that plaintiff's damages were $4,208.33. Judgment was rendered in his favor accordingly.

For the appellant there was a brief by *Phillips & Hicks,* and oral argument by *M. C. Phillips* and *N. P. Christiansen.*

For the respondent there was a brief by *C. A. Dean,* attorney, and *Simon Gillen,* of counsel, and oral argument by *Mr. Gillen.*

MARSHALL, J. The jury found that the defendant, through its proper representative, knew before the accident that plaintiff's working place was unsafe. Appellant's counsel contend that there is no warrant in the evidence for such finding. It seems to us otherwise. There was considerable evidence tending to show that there was a weakened condition of the trestle, causing it to give way when the rolling body of coal struck the post, in that such post had been so destroyed by fire at the top that the cap no longer held it firmly in place; and that the foreman, Roth, made such an examination of the structure before the accident that he must have seen such damaged condition. He testified, substantially, that he examined the post where it parted from the cap. The jury went upon the theory that since he did so he must have seen all that was obvious, and that the defect referred to was of that character.

Complaint is made because the court in framing the special verdict included a number of questions covering undisputed matters and directed the proper answers, and in other ways indicated what answers were necessary to certain questions to enable plaintiff to recover. It has not yet been held error for a trial court to include in a special verdict undisputed matters, and direct answers to be made, or not to frame the verdict so as to disguise the effect of particular questions upon the final result. Doubtless the court may so frame a special verdict as to cover all the facts vital to the cause of action and defense, if it sees fit, whether controverted on the evidence or not. If the result is to inform the jury how particular questions must be answered to enable a plaintiff to recover, that is the result of the law, not the abuse of it. True, this court has often advised that the manner of framing the verdict, best calculated to carry out the spirit of the statute, is to include in it only such questions as will, when answered, in view of the undisputed matters, enable the court to apply the law to the case. That has been iterated and reiterated so many times that we cannot hope to add to the importance of it by repeating it again. This case probably might have been submitted to the jury with five or six questions instead of nineteen, yet we cannot see that any reversible error was committed. The verdict, on the whole, follows the line suggested by this court much more closely than many that often come up for review.

It is said that the verdict does not support the judgment, because it does not pass upon the question of whether Roth was a fellow-servant. If the court had added to the verdict a question on that, it would only have increased by one the at least useless interrogatories respecting undisputed matters. The evidence is all one way that Roth had full charge of the work upon the dock, that defendant left to him the duty of proving a safe working place for the men, and that he was not personally engaged with them in removing the coal. That

made him in every sense a vice-principal in respect to the-safety of the trestle, and all other matters affecting the char-acter of the working place in which he placed respondent and his associates.

The most important contention advanced by appellant's-counsel, as said after presenting the matters to which we have referred, is that no actionable negligence was shown by the evidence. That, however, seems to have been decided in favor of respondent by the conclusions that appellant, by its proper-representative, knew that respondent's working place was un-safe before the accident, since there is no claim that respond-ent knew that fact or was chargeable with knowledge thereof under the circumstances, and the jury found that the condi-tion of the trestle was the proximate cause of the accident. In the discussion of this contention appellant's counsel again introduce the claim that Roth was a fellow-servant, and that his negligence was not imputable to appellant. On that *Wis-kie v. Montello G. Co.* 111 Wis. 443, 87 N. W. 461, and *Schultz v. C., M. & St. P. R. Co.* 116 Wis. 31, 92 N. W. 377, are referred to. We are unable to see that either case is in point. It has often been held that whether one employee is the-fellow-servant of another does not depend upon the grade, but does upon the character of the service the two are engaged in. *Dwyer v. Am. Exp. Co.* 82 Wis. 307, 52 N. W. 304; *Hart-ford v. N. P. R. Co.* 91 Wis. 374, 64 N. W. 1033; *Adams v. Snow,* 106 Wis. 152, 81 N. W. 983. When a foreman is en-gaged with other employees in personally doing any particu-lar act, as that of blasting, the situation in *Wiskie v. Montello G. Co.,* all are fellow-servants. This is not a case where a crew, consisting of a foreman and those under his charge, were at work to accomplish a common object, as in the case relied upon by counsel, but one where a crew of men were set at work by the master, in the person of his foreman, in a dangerous place. Roth, as before indicated, took no part in moving the coal, but represented the master respecting the working place of the men who performed that service. The-

distinction between where a foreman is a fellow-servant and where he stands in the place of the master is too familiar, it seems, to warrant discussing it at length. The case cited by appellant's counsel is a good example of the former, while *McMahon v. Ida M. Co.* 95 Wis. 308, 70 N. W. 478, is a good example of the latter. *Klochinski v. Shores L. Co.* 93 Wis. 417, 67 N. W. 934, is an example of how a foreman may act in the capacity of a vice-principal in placing another under him at work, and become a mere fellow-servant of such other in respect to such work by engaging with him in the performance thereof. In this case Roth stood for the principal in putting the men to work. The duty as regards the safety of the working place was personal with the master. Roth's neglect in regard thereto was therefore appellant's neglect.

On the branch of the case above discussed it is argued that other causes than a defect in the trestle may, by the evidence, have been the cause of the accident as likely as that. We cannot sanction that such appears to have been the situation as a matter of law. True, the immediate cause of the fall of the trestle was the rolling of a large body of coal against the post, but it fairly appears that such an occurrence was one to be reasonably expected under the circumstances, and that it would not have injured the trestle had the post been fastened firmly to the cap, and the jury in effect so found. In that state of the case the jury were warranted in finding that the negligence of the foreman in not acquainting the men with the fact that the post was not so fastened, or otherwise remedying the danger, was the proximate cause of the accident.

Further complaint is made because the court directed the jury, in case they found that the weakened condition of the trestle was the proximate cause of the accident, not to answer the question, as regards whether the act which started the body of coal down the sloping side of the coal pile was such proximate cause. The conclusive answer to that is that an

affirmative answer to the question as to whether the defective condition of the trestle was the proximate cause of the accident, in connection with the instructions in respect thereto, negatives any other circumstance being such cause, as a detailed statement of the situation will show. If it be true, as claimed, that the instructions as to the unanswered question were not strictly correct, we are unable to see how appellant was prejudiced. This was the situation: No complaint was made of the instructions respecting the question which was answered. Such instructions gave the jury to understand that an affirmative answer required them to first find that the plaintiff's working place, to the knowledge of appellant, was unsafe for a sufficient length of time before the accident to have enabled it to protect him therefrom by the exercise of ordinary care; that the fall of the trestle was the natural and probable consequence of such unsafe condition; that the probability of the fall of the trestle, with the consequent injury to some one of its employees, in the light of attending circumstances, was an event which, in the exercise of ordinary care by one circumstanced as appellant was, was reasonably to be apprehended. It is easily seen that when the jury found all those essentials of responsible causation, the whole subject in that regard was covered, leaving no need to answer any interrogatory as to whether some act of a fellow-servant, or some other circumstance, was the producing cause of the injury. All of such other circumstances that might have had a bearing, probably or possibly, in view of the evidence, upon the cause of the injury, were negatived by the affirmative finding charging to appellant's negligence, in effect, the sole responsibility therefor.

Complaint is made of the size of the verdict. That is based on the theory that there is no evidence warranting a reasonable belief that respondent suffered any considerable mental impairment as a result of the accident. There was very fair opinion evidence on that subject, and evidence of circum-

stances indicating that respondent was rather weak-minded before the injury; that his condition in that regard was worse. to a considerable degree thereafter, and that such condition had been noticeably progressive in character since the accident. The evidence was not strong, to be sure, but it was undisputed, that respondent did receive quite serious injuries in the region of his neck, back and head,—injuries which were calculated to produce mental impairment. That, with the opinion evidence that such impairment was produced, and the evidence in respect to respondent's actions, indicating the same to some degree, even to the mind of a nonexpert, prevents us from holding as a matter of law that the jury were not warranted in assessing damages upon the theory that respondent's mind was injured by the negligence complained of.

What we have said covers all the questions presented deemed worthy of special mention. The case on its facts is very much like *Nix v. C. Reiss Coal Co.* 114 Wis. 493, 90 N. W. 437, which grew out of the same accident. The evidence here seems to be stronger than in the previous case. It is particularly stronger in respect to the situation of the post which was struck by the rolling lump of coal, after the accident. Substantially every question now presented was presented before and was decided then against appellant. It seems that this case might well have been, under the circumstances, decided by referring to the previous adjudication, with the statement that no good reason was shown by the new record for making any different decision than before, though we have seen fit to briefly discuss the matters presented, somewhat out of regard for the belief of the learned counsel who presented the case for consideration, that the evidence in the present record differs sufficiently from the evidence produced on the former trial to warrant a careful reconsideration of the points involved.

*By the Court.*—The judgment is affirmed.