JOHN C. ERICKSON

*vs.*

MONSON CONSOLIDATED SLATE COMPANY.

Penobscot.    Opinion March 20, 1905.

*Master and Servant.    Contributory Negligence.    Assumption of Risk.    Dynamite.*

The relation of master and servant is contractual, and the law by presumption incorporates into the contract reciprocal duties.

The master is obliged to provide the servant with a reasonably safe place in which to perform his labor having reference to the nature of the work, and if he is inexperienced to instruct him and warn him of the existence of particular dangers, so that he may be able to decide with discretion whether he will assume the hazards of the employment.

The servant is bound to use reasonable care, and to assume ordinary risks incident to the business, those which are obvious or which he ought to know and appreciate, and those pointed out by the master.

It is not negligence to use dynamite in slate quarrying, but on account of its great explosive power it is a recognized element of danger in such work, and proportionate care is required of both master and servant in its use.

It would not be negligence in law to leave unexploded cartridges of dynamite in old holes in the pit of the quarry when new holes are being drilled, but it would be the duty of the master to warn a servant of this particular danger, unless he knew or ought to know that they were frequently left from imperfect explosions.  Instructions of the foreman to the plaintiff, when drilling " to set his drill as far as he could from the old holes and not to bother them," were not only words of direction but of warning, and would ordinarily fulfil the defendant's duty as indicating a condition of danger.

Where, in an action to recover damages sustained from an accidental explosion of dynamite, the plaintiff was an adult of good intelligence, familiar with slate quarries, and of the particular quarry by working for two years on the dump, and running the hoister within two rods of the pit, and knew that the men were constantly using dynamite, knew it to be a dangerous explosive and that unexploded cartridges frequently remained in the place where he was operating the drill, and was directed to avoid proximity to the old holes, and he set his drill within four or five inches from one containing dynamite, without ascertaining its location by

clearing the surface of the ledge, and the explosion was caused by the action of the drill, *held*, that he was guilty of contributory negligence.

Where a servant receives positive orders from the master as to the manner in which he is to do his work, this imposes upon him a duty, and failure to perform it is prima facie evidence of his negligence.

On motion by defendant. Sustained.

Action on the case to recover damages for personal injuries sustained by the plaintiff from an accidental explosion of dynamite in the slate quarry of the defendant where the plaintiff was engaged in operating a steam drill in drilling holes for the purpose of blasting out slate. The plaintiff recovered a verdict for $4000. Thereupon the defendant filed a general motion for a new trial.

The case is stated in the opinion.

*A. L. Blanchard and Louis C. Stearns*, for plaintiff.

*Frank E. Southard*, for defendant.

SITTING:  WISWELL, C. J., EMERY, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

PEABODY, J.  This action was brought to recover damages sustained by the plaintiff from an accidental explosion of dynamite in the slate quarry of the defendant at Monson, Maine. The plaintiff was employed by the defendant company and at the time of the accident was engaged in operating a steam drill in drilling holes for the purpose of blasting out slate. The charge of dynamite which caused the accident had been left unexploded in a hole previously drilled by the defendant. This fact was not known to the defendant or to the plaintiff.

The plaintiff was under the supervision of his brother who had employed him ten days before and had instructed him how to operate the drill. The steam drill and boiler were connected by a rubber hose six or seven feet long so that holes might be drilled for a distance of the length of the hose and when drilling at such a distance the operator must leave the drill and go to the valve to turn on steam.

At the time of the accident the plaintiff had drilled six or seven holes and set his drill for another at about the full length of the hose

and had requested a co-servant to turn on steam. He then put one foot on the weight to hold the drill down on the ledge. He had previously prepared the place to set the drill by the use of a steel wedge called a gouge, and with it had cut holes in the ledge for the three feet of the drill. There were snow and ice at the bottom of the pit and with a pick-axe and shovel he had cleared them away. The place cleared was about six inches wide and eighteen inches long. While he was holding the drill set in motion by the steam turned on at his request, the explosion occurred. No other cause for it is assigned than the percussion of the drill directly upon the dynamite or the concussion from its action upon the ledge rock.

The relation of master and servant is contractual, and the law by presumption incorporates into the contract reciprocal duties. The master assumes the obligation to provide the servant with a reasonably suitable and safe place in which to perform his labor, having reference to the work in which he is engaged. *Hopkins* v. *O'Leary*, 176 Mass. 258; *Buzzell* v. *Laconia Mfg. Co.*, 48 Maine, 113; *Shanney* v. *Androscoggin Mills*, 66 Maine, 420; *Cunningham* v. *Bath Iron Works*, 92 Maine, 501; he is also bound to warn an inexperienced servant of any particular danger incident to the occupation and to give him such instruction as shall enable him to decide with discretion whether he will assume the hazards of the employment. *Welch* v. *Bath Iron Works*, 98 Maine, 361; *McMahon* v. *Ida Mining Co.*, 95 Wis. 308; *McEllingott* v. *Randolph*, 61 Conn. 157; *Smith* v. *Peninsula Car Works*, 60 Mich. 501. The law of master and servant requires of the servant the duty of using reasonable care, and of assuming ordinary risks incident to his employment including the negligence of a fellow servant, those which are obvious or which with reasonable care he ought to know and appreciate, and those pointed out by the master. This rule is consistent with justice and public policy. The master is in no sense an insurer of the safety of his servant and the law gives no indemnity against the consequences of recklessness. *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400.

A corporation acts through its agents and the special duties under consideration devolve upon a vice principal. At the time of the accident the brother of the plaintiff who was in charge of the outside

crew of the quarry, consisting of men on the dump, the hoisters, and the drill-men, must be considered as acting in this representative capacity; and if any safeguards were required or any information necessary to enable the plaintiff to understand and appreciate the dangers of working the drill in the pit, under the existing conditions it was the duty of this foreman to furnish them. The evidence as to what instructions he gave the plaintiff is vague. His testimony on this subject tended to negative any definite instructions or cautions in regard to unexploded cartridges, but it did show that he told the plaintiff to set his drill as far as possible from the old holes.

The facility with which quarrying is done by the use of dynamite, makes it recognized as indispensable in carrying on the business. Its dangerous character requires a proportionate degree of care, but the legal standard is reasonable care. The alleged negligence of the defendant consisted not in using dynamite, but in allowing unexploded cartridges or portions of them to remain in holes in the pit of the quarry where the plaintiff was working. The holes left after the explosion could be seen when the debris was removed and it might be possible to explode them before other holes were drilled, or to indicate them by cautionary signals; but the omission of such precautions would not be negligence in law. The presence of these holes was an element of danger in the work. The defendant's negligence must therefore depend upon the question of his duty to notify the plaintiff of the particular danger and of his fulfilment of this duty. If the plaintiff, from his experience gained in working about the quarry, ought to have known and appreciated the danger, no duty rested upon the master to give him special warning. The instruction given him by the foreman "to set his drill as far as he could from the old holes and not to bother them," were words not only of direction but of warning, but if they may be considered as in themselves not sufficiently definite to cause an inexperienced man to appreciate them as indicating a condition of danger, we think that the plaintiff in view of his general familiarity with the methods of blasting in this quarry, and the directions he had received, cannot recover in this action by reason of his contributory negligence. He was thirty years of age; he had been familiar with slate quarries part of the time for

ten years and for two years prior to the accident, had worked on the top of the dump in this quarry, and for a year and a half had run the hoister about ten rods from the pit in which the accident occurred. He knew that the men in the pit were using dynamite constantly, and received signals from them when explosions were made, he knew the nature of the explosive and that it was dangerous, and he knew, what was common knowledge among the quarry-men, that unexploded cartridges remained in the old holes. He was instructed by his brother how to run the drill and was directed in drilling to avoid proximity to these old holes. After the accident an examination showed that the hole was being drilled into the ledge but four or five inches distant from the old hole which must have contained dynamite. The positive direction which he received required him to ascertain the location of the holes before setting his drill. To do this it was necessary for him to clear a wider area than the evidence shows he did. He had sufficient tools at hand and a supply of steam and hot water, for the removal of the snow and ice from the surface of the ledge. He failed to do this sufficiently to expose to view the hole containing the unexploded dynamite. *Welch* v. *Bath Iron Works*, 98 Maine, 361, supra. The direction as to the manner of doing his work imposed upon him a duty and his failure to perform it is prima facie evidence of his negligence. Shearman & Redfield on Negligence, sec. 13 a; Deering on Negligence, sec. 211.

*Motion granted.*