HORN, by guardian *ad litem,* Appellant, vs. LA CROSSE BOX COMPANY and another, Respondents.

*November 22—December 13, 1904.*

*Master and servant: Personal injuries: Negligence: Assumption of risk: Contributory negligence: Direction of verdict: Vice-principal.*

1. In an action for personal injuries received by a fifteen-year-old boy from the rapidly revolving knives of a planing machine, under the facts stated in the opinion, *held:*

    (1) The plaintiff's evidence, that he was ignorant of the danger, was not wholly incredible.

    (2) A reasonable mind could absolve him from negligence in attempting to do that which he had seen others do in safety.

    (3) It was error to direct a verdict for defendant.

2. In such case, it appeared, among other things, that plaintiff, who had been employed in defendant's factory about three weeks, and with no previous experience of any sort with machinery, while assisting defendant's superintendent to operate a planing machine, was directed by the superintendent to move a device whereby the power was disconnected from the machine, and to empty a hopper underneath rapidly revolving knives. These knives were so hung that they would, by momentum, continue their revolutions for some time after the power was disconnected, and were obscured from ordinary view. Plaintiff immediately went to the hopper and attempted to empty it, when he was injured. *Held,* sufficient proof of negligence, since the superintendent had no reason to suppose that plaintiff, with his youth and inexperience, had any knowledge of the occult and hidden devices and conditions which made an immediate attempt to empty the hopper dangerous, an act which he had imperatively commanded plaintiff to do.

3. Whether an act is that of a fellow-servant or a vice-principal, depends not on the grade or the position of the person doing it, but on the character of the act.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

Plaintiff, a fifteen-year-old boy, had been employed for about three weeks in the corporate defendant's box factory,

defendant *Joosten* being its secretary and general manager. He had no previous experience of any sort with machinery, and his duties in the factory had been various, such as carrying lumber, sweeping up, and, more particularly, receiving lumber from saws and planers and distributing it to places of further treatment. The machine at which he was injured was a planer, the machine proper consisting of a framework supporting a table about three feet from the ground, twenty-two inches long east and west, at each end of which were upper and lower feed rollers to propel the boards throught it. In the twenty-two-inch space between these rollers were two cylinders, one above and the other below the surface of the table, to which were bolted knife edges, and which, revolving with great rapidity, served to plane the boards as they passed through. The operator of the machine stood at the west end and inserted the boards, while the plaintiff at times was required to stand at the end of a table some seven feet long, eastward of this planer, to receive, sort, and carry away the planed boards as they came through. Motion was communicated to the machine by means of a large belt passing from the main shaft overhead to counter-shaft on the floor. It was ineffective when loose, but was rendered effective by lowering against it a large weighted pulley near to and on the south side of the seven-foot table above mentioned, and power was removed from the machine by lifting this pulley off of the belt. The effect of the removing of this power was to stop the movement of the feed rollers, and therefore of the boards; but the two knife cylinders, being hung so as to revolve with the least possible friction, would, by momentum, continue their revolution for some time—sometimes a half a minute after the belt was relaxed. Immediately below the planer was a metal hopper, terminating at the floor in a six-inch pipe which was expected to catch the chips which fell downward and conduct them through the floor by the aid of an air blast; a similar hopper sat above the planer covering completely the

knives. The lower hopper, at intervals, from three to six times per day, would become clogged and filled up with sawdust, whereupon it became necessary for the operator to get under the machine, lift the hopper away from the orifice in the floor, and empty the sawdust out; before doing which, the pulley was lifted off of the main belt, and power withdrawn from the machine. Plaintiff had never emptied this hopper, but he was expected, after the first two or three days, to lift the pressure pulley off the belt. He testifies that he had no knowledge of the interior mechanism of the planing machine, nor by what means the smoothing of the boards was accomplished; that only the feed rollers were in sight, or obvious, and obscured the vision of the knives within; also, that he was entirely ignorant of the fact that such knives revolved at all, and of the fact that they, unlike the feed rollers, which he could see, did not stop immediately upon relaxing the main belt. There was also evidence that the noise prevalent in the factory from some twenty other machines was such that the continuing revolution of the knife cylinders might well escape notice. On the 30th of July, 1903, the defendant *Joosten,* who was in command of the whole shop, was temporarily feeding boards into this planer, when the lower hopper became choked up, whereupon he gave plaintiff the signal to relieve the tension of the belt by lifting the pulley, which plaintiff did. He thereupon directed plaintiff, by signal, to empty the hopper. Plaintiff, accordingly, lifted up the seven-foot table standing between him and the planing machine, got down in the space under the planer, and, steadying himself with one hand, attempted to take hold of the upper edge of the hopper for this purpose, and thereby his hand came in contact with the revolving knives, and was so lacerated as to require amputation. The edge of the hopper was only an inch and a half from the knife as it revolved. No warning or explanation had ever been given the plaintiff of the peril of contact with this knife in taking out and emptying the hopper,

nor of the fact that the knives would continue to revolve for a time after the rest of the machinery stopped. The plaintiff alleges various phases of negligence in the way of defects in the machine, etc., but, among others, the direction to plaintiff from the defendant *Joosten* to perform the dangerous work of removing this hopper without warning. At the close of the evidence the court held that the plaintiff must, by the exercise of ordinary reason over what was obvious, have realized the existence and movement of the knife cylinders, and the peril of attempting to remove the hopper before they had stopped, and therefore was precluded from recovery by his contributory negligence, or voluntary assumption of the risk from that peril, and accordingly directed a verdict in favor of the defendants, from judgment upon which the plaintiff appeals.

For the appellant there was a brief by *Higbee & Bunge,* of counsel, and oral argument by *E. C. Higbee.*

*George H. Gordon,* for the respondents.

DODGE, J.   Doubtless if plaintiff, though only a fifteen-year-old boy, knew that there was a rapidly revolving knife in such close proximity to the edge of the lower hopper that his hand was likely to come into contact therewith in attempting to grasp that edge, he must be held to have appreciated the danger, and to have assumed that risk in attempting to do the work, although by express direction of his employer. The court below, in an opinion filed upon a motion to direct a verdict, evidently reached the conclusion that the plaintiff must have known such facts, notwithstanding his positive denials. The only undisputed proof of what plaintiff knew is that, within the twenty-two inch space between the forward feed rollers and the back, were certain knives, and that by means thereof boards pushed in at one end came out at the other smoothed on their surfaces.   He testifies he had never seen the knives in place; he only knew of their existence from hav-

ing seen them leaning against the machine before being put in place; and this evidence is not unreasonable, for his duties toward the machine ceased when boards ceased to come through it. Now, from these facts alone, might not a fifteen-year-old boy, with no knowledge or experience of machinery or mechanical processes, be ignorant of the fact that these knives revolved? Is it not reasonably probable that such a person may have conceived that they accomplished the smoothing of the boards substantially by a reversal of the same process, as does the carpenter's plane, pushed over them? The writer confesses to have had that impression himself as to machine planing until he had an opportunity to examine one of such devices. However absurd it may seem to one who is familiar with the processes and apparatus for manipulating lumber, we are unable to say that it is inconceivable that one not so familiar might never gain a conception of a rapidly revolving and dangerous knife cylinder from the mere fact that knife blades smoothed boards which came through. But even if plaintiff must have gained that conception, as the court below seems to think and as counsel for respondents argue, there are still respects in which it is not beyond the realm of reasonable probability that he may have failed to know of those physical facts from which arose the peril. There is not the slightest evidence that he knew anything of the size of the cylinders, so that he might infer that one of them extended so far below the table as to be near the edge of the hopper that he was required to remove, which was at least four inches below the under surface of the planed boards. Neither is there the slightest evidence that he had any knowledge whether the cylinder which revolved below the surface of the table was near the front end or near the rear end of the machine. If near the front end, it would have been in no dangerous proximity to the place where he put his hands. But, further than this, is the positive testimony of the plaintiff that he had no knowledge that, when the machine stopped by his withdraw-

ing the pressure from the main belt, the knives did not also stop; and there is nothing in the evidence to indicate that this fact was in any wise obvious, or even apparent. Clearly, if the knives were stationary, he incurred no peril in performing the duty imposed upon him. He had seen others, without injury, remove this hopper several times daily, but under circumstances of obscurement and diversion of his attention, such as to prevent any very close observation of how they went about it. He received direction from his superior to do the work, and he had a right to suppose that he would not be assigned to a service involving imminent peril without some warning of the latter fact. In weighing all these circumstances, it must also be remembered that plaintiff was a boy, and not a mature man; that his care or negligence is to be measured by the conduct of the great mass of mankind, under similar circumstances; and that his immaturity is an important one of those circumstances. The jury might well consider, consistent with due care in him, a measure of inadvertence or want of reflection which would be repugnant to such conclusion in case of an adult. From all these considerations, we are convinced that the court below could not properly hold that the plaintiff's evidence that he was ignorant of the danger was wholly incredible, nor that no reasonable mind could absolve him from negligence in attempting to do that which he had so often seen done by others safely.

The trial court seems also to have been of the opinion that negligence on the part of the defendant was not proved, on the ground that *Joosten,* the superintendent, had no reason to suppose that plaintiff would immediately go to this hopper and attempt to remove it without giving time for the knives to stop their revolution. This ignores two considerations: First, that Mr. *Joosten* had no reason to suppose that the plaintiff, with his known youth and inexperience, had any knowledge of the occult and hidden devices and conditions which made an immediate attempt to remove the hopper dan-

gerous; but also it ignores the testimony—disputed, it is true, but still proper to be considered by the jury—that he imperatively commanded plaintiff to do the very thing which he did.

These views are conclusive against the contention of the respondent *Joosten*, who, having authority over him, expressly directed plaintiff to empty this hopper. It is, however, claimed that the defendant box company is not thereby rendered liable, because *Joosten* was a co-employee with the plaintiff. The law governing this question is well settled by the cases respondents cite: *Klochinski v. Shores L. Co.* 93 Wis. 417, 67 N. W. 934; *Okonski v. Pennsylvania & O. F. Co.* 114 Wis. 448, 90 N. W. 429; *Baumann v. C. Reiss Coal Co.* 118 Wis. 330, 95 N. W. 139. Whether an act is that of a fellow-servant or a vice-principal, depends not on the grade or position of the person doing it, but on the character of the act. That *Joosten* was general manager is by no means conclusive. Doubtless when he undertook to feed the planer, he acted as a fellow-servant, but when he acted in his capacity as manager in assigning employees to their respective duties he was vice-principal. Now, it appears that it was not a function of the feeder of the planer to give directions to plaintiff or any one else to empty this hopper. *Joosten* himself, while denying that he instructed plaintiff to do this work, says he went to direct one Miller, a regular machine operator, to do it, thus indicating that he was exercising his power of command. We cannot agree with counsel that the jury might not have found that, in assigning plaintiff to this dangerous duty, his act was in the capacity of vice-principal.

We conclude that the case should have gone to the jury, and that error was committed in directing a verdict.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.