KROGER, Appellant, vs. CUMBERLAND FRUIT PACKAGE COMPANY, Respondent.

*February 4—March 14, 1911.*

*Trial: Direction of verdict: Review on appeal: Master and servant: Dangerous machinery: Duty to guard: Injury to servant: Contributory negligence: Questions for jury: Incredible testimony.*

1. Upon a motion to direct a verdict the trial court must determine as a question of fact whether the evidence in any reasonable view would warrant any other conclusion, and if satisfied that it would not should direct the verdict.

2. In directing a verdict under such circumstances there is no invasion of the province of the jury.

3. The trial court's decision of the question of fact arising upon a motion to direct a verdict should not be disturbed on appeal unless clearly wrong.

4. A difference of opinion among the justices of the appellate court upon the question of fact involved does not preclude a holding that the trial court was right in directing a verdict.

5. The duty to fence or guard dangerous machinery does not extend to parts thereof so located that in order to reach the region of danger a person must depart from any way which he could reasonably be expected to take.

6. In an action for personal injury to a servant, his positive testimony that he did not know there was danger in the place in which he put his hand does not necessarily make the question of his contributory negligence one for the jury, where the circumstances so clearly overcome such testimony as to render it not in reason believable.

7. Upon evidence showing, among other things, that plaintiff was a man fifty years old and in full possession of his faculties, of ordinary intelligence, and with some experience in operating dangerous machinery containing revolving cylinders, though none with respect to a planing machine; that without instruction as to the operation of the machine he was put to work in defendant's factory, feeding boards into a small planer having a single revolving cylinder armed with knives, protected in front and over the top but open at the back to permit the escape of shavings; that after working about five hours with full opportunity to observe, from the operation of the pulleys and belts connected with the machine, the noise and vibration resulting from its operation, and the stream of shavings thrown therefrom, as well as its effect on the boards, that a powerful cutting mechanism was revolving within a very narrow zone, although the knives were invisible when running at full speed, he attempted, unnecessarily, to brush away with his hand the shavings that accumulated on a metal bar just back of the cylinder, and was injured by the knives,—it is *held* that there was no error in directing a verdict for defendant either on the ground that no actionable negligence was shown or on the ground that plaintiff was conclusively shown to have been guilty of contributory negligence, although he testified that he did not know that knives were revolving in the region where he placed his hand.

Appeal from a judgment of the circuit court for Douglas county: Frank A. Ross, Circuit Judge. *Affirmed.*

Action to recover for a personal injury. Plaintiff stated these facts as a ground for recovery:

A few days prior to April, 1910, plaintiff entered the service of defendant as a common laborer in its factory. On that day he was put to work at a planer. His duties in the main were to stand at the front end of the planer, take short boards from a bolting saw near by, and feed them into the machine. Such machine was equipped with a rapidly revolving arbor to which there were two knives suitably attached which surfaced boards as they were passed under them. The knives were about two and one-half feet long set on the arbor, that being located crosswise of the planer frame far enough above the same to allow the boards to be pushed

under it as it was in motion and about four feet from the front of the table. The knives and arbor formed a shaft about two inches through. When it was in rapid motion the knives were not visible as extending outward from the surface of the shaft. On the opposite side and above the knife cylinder it was entirely unguarded. When the cylinder was in motion the knives were not observable by a person located as plaintiff was in the performance of his duties. The rapidly revolving instrumentality where exposed, was entirely unguarded or fenced and so located as to be dangerous to a person required to feed the machine, who was unacquainted with its mechanism and operation. Plaintiff was ignorant in that regard. No instruction was given him in respect thereto. He did not know how the planing was accomplished or that there was danger of personal injury attending the brushing away by hand of shavings from the top of the planer or in front of the revolving knives, while he supposed such brushing was proper. It was practicable to have guarded the knives so as to prevent the operator's hand coming in contact therewith. Plaintiff, after having been engaged at the work about two hours, in the exercise of ordinary care attempted with his right hand to clear away sawdust which had accumulated on top of the planer, when such hand came in contact with the knives and was so injured that it had to be amputated close to the wrist. By reason thereof he was damaged in loss of time, expenses for medical and surgical attention, pain, and permanent disability in the sum of $20,000.

Defendant answered, among other things, putting in issue all plaintiff's charges of negligence, denying he was hired as a common laborer, alleging that when plaintiff sought employment he represented himself to be competent to perform any work in and about the factory which might be assigned to him, alleging that in fact he was notified he would be required to operate machines; that he chose the particular work

on the day in question, had done such work before and been doing it on such day nearly the whole of the time; that the knives were covered over the top for the protection of operators, were necessarily exposed on the back side to permit of escape of shavings and of the work being done but without presenting any danger to the feeder in the exercise of ordinary care. The injury and manner in which it was produced were admitted, but it was pleaded that plaintiff was a man of mature years, knew of the general features of the planer; that it was dangerous to place his hand in the vicinity of the knives, and that he was injured by his own want of ordinary care.

The evidence was to this effect: Plaintiff was injured as alleged. He was about fifty years old and had lived in this country nearly thirty years. By occupation he had been, most of the time, a farmer. He had worked considerably about machinery and helped operate the same on some occasions although he had not had any experience in operating a planer. He had worked with threshing machines, observed the motion of cylinders, and heard the noise produced by such machines. He had worked with a bolting saw and knew the manner in which rotary motion, such as was necessary with the planer, was produced. He knew that such attachments as characterized the planer, produced such motion. The knives were observable by casual observation when the planer was not in operation. He had been near it on several occasions when it was so circumstanced and knew the change wrought in the material he handled by passing the same through the machine. He had observed as a board went through that shavings were taken therefrom and thrown with much force from the far side of the cylinder location. He was aware that some feature in the narrow zone which formed the space entirely obscured from view between where the end of a board disappeared as he fed the planer and came into view on the other side exerted much power in respect to it,

causing much noise and trembling of the planer frame and throwing out of the shavings. While, as he féd the machine he could not observe the revolving knives he, nevertheless, took a location and assumed an attitude where he could and did put his mittened right hand over and into the place from which he observed the shavings thrown out and attempted to brush off such as accumulated on the pressure bar, extending out a little way from the revolving cylinder, and just near enough on the back side to escape it. He knew it was unsafe to put his hand into a rapidly revolving cylinder, armed with teeth or anything of that nature. He knew—by the noise of the planer when in motion and the effect upon a board fed in, the throwing of the shavings, the deposit of shavings on the planer behind the knives at the point where he attempted to brush them off, the similarity of the sound to that of a threshing machine cylinder and other circumstances—that there was a sharp cutting mechanism within the narrow space of some two or three inches between where the boards he fed into the planer came in contact with the revolving shaft and the point of emergence on the back side; that something operated on top of such boards to produce the effect which was in evidence, constantly, when the machine was in operation. He knew that there was a rotary motion to the shaft on which the knives were placed and that it was very rapid, something like a threshing machine cylinder. There was a set of live rolls in front of and some little distance from the knives. From the top of the cylinder over and down in front about to the point to where the boards engaged the knives, there was what was called the chip breaker. That and the rolls so obscured the knives that a person standing at the front of the table could not see them, but standing a little on either side they were observable when the machine was idle and the revolving body was observable when in operation. Plaintiff worked about the planer some before he was injured. He carried boards thereto from the bolting

saw, laying them conveniently for the feeder. He had been feeding the planer for about five hours before he was hurt. Before he took the work the machine and bolting saw were placed near together so the one who fed the former could take boards from the latter. Back of the knives there was a metal strip, two or three inches wide, called a pressure bar under which the boards ran as they left the knives. The bar sat down on the boards and the knives revolved just back of and came a little above it. On this bar shavings would accumulate to some extent. They could be left there, or be removed by using a stick. There was some dispute as to whether there was need of attending to this feature. The evidence quite satisfactorily showed there was none. As plaintiff stood in doing his work at the front of the table some four or five feet from the knives, he operated by taking a board at a time from the bolting saw, or near by it, laying the board on the table and pushing it forward till it engaged the front rolls by which it was carried to an engagement with the knives and through under the pressure bar to an engagement with the back roll, by which after leaving the front one it was moved on till released therefrom when it was removed by the back tender. Plaintiff had observed shavings and dirt accumulate on the pressure bar. Several times he had reached over and brushed off the shavings with his mittened right hand. In doing so he put his hand over and down at a point somewhat out of his line of vision and close to the knives. No one had told him to do that. He had not seen any one do so. He had no knowledge as to whether it was necessary to do so or not. He observed that the planer did its work right along whether the shavings were brushed from the pressure bar or left to remain there. In making the movement mentioned his hand invaded the cylinder zone and was destroyed. He said he knew there was something between where the boards went in and where they came out which did the work, but did not know it was revolving knives; that he had never ob-

served them, though he had, as he put in a board, always seen the shavings fly with force from the back side of the cylinder region where the board came out; that he did not know it was dangerous to do what he did and that no one had explained the matter to him in any way; that he saw the result and the appliance which he knew produced rotary motion but did not know what produced the shavings, particularly that it was the cylinder armed with the revolving knives.

At the close of the evidence, on motion, the court directed a verdict in defendant's favor. Judgment was rendered accordingly.

*Victor Linley,* attorney, and *Ludwig Arctander,* of counsel, for the appellant.

For the respondent there was a brief by *Coe Bros.* and *Briggs, Thygeson, Loomis & Everall,* and oral argument by *A. G. Briggs.*

MARSHALL, J.   From the foregoing it will be seen the situation, in brief, which the trial court had to face on the motion to direct a verdict was this: Appellant—at the zenith of maturity for one of his class, a man of some experience working around dangerous machinery and of ordinary opportunity for observation respecting the same and of ordinary intelligence, in the full possession of his faculties, but without experience in operating the particular machine or having had instructions in respect thereto—was put to work feeding boards into an ordinary small planer of ordinary construction. It had but one cutting head of small diameter, armed with two knives, observable from the front when idle and from the sides when in operation and open to fair view from the back. Whether viewed from any point, on account of rapidity of motion, the knives were so invisible even to the practiced eye as not to be appreciated. The cylinder was covered over the top and down in front to about where an opening was necessary to permit of boards' being fed in, and

uncovered at the back to permit of their passing and the shavings escaping.   For the purpose of removing an accumulation of the latter from a pressure bar placed just back of the cylinder, with the upper surface below the top thereof, plaintiff, from a position at the side and towards the front of the machine, with his mittened right hand, reached over and into the zone of the cylinder, above and at the back of the pressure bar, and was injured.   Under such circumstances, can it reasonably be said respondent was actionably negligent proximately causing such injury?   Moreover, can it reasonably be said appellant was free from contributory negligence notwithstanding his testimony that he did not know the knives were revolving in the region where he placed his hand, in view of the fact that he saw the effect upon the boards as he fed them through the planer, that a stream of shavings was thrown constantly back from such region, accompanied by a sharp noise from the cylinder region, and he observed and knew the use of the appliances which produced rotary motion?

By the motion to direct a verdict the propositions suggested were presented to the trial court for solution.   They, in a sense, involved matter of fact, but not all such are for jury solution.   It almost seems a work of supererogation to speak of such elementary matters, but—witnessing, as we do, from time to time, apparent want of appreciation that a motion to direct a verdict is as legitimate as any matter of practice in the administration of justice; that it may rightly be made in any case; that it is advisable to make it in many cases; that to make it is a professional duty in some cases; and that whenever made a judicial duty clearly devolves upon the trial judge to decide the matter and, if satisfied that the evidence in any reasonable view will not warrant but one conclusion, a clear judicial duty to direct a verdict (*Finkelston v. C., M. & St. P. R. Co.* 94 Wis. 270, 68 N. W. 1005; *Cawley v. La Crosse City R. Co.* 101 Wis. 145, 77 N.

W. 179; *Chybowski v. Bucyrus Co.* 127 Wis. 332, 106 N. W. 833),—it is thought to be appropriate, even if there be no real necessity for it, to speak of some fundamental principles of our system of jurisprudence which are involved.

Upon the motion in this case the trial judge was asked to decide whether, conceding the evidence to establish in plaintiff's favor to a reasonable certainty all it tended to establish, could men of the age of discretion, of ordinary intelligence, reasonably differ respecting the proper conclusion to draw? Or to put it another way, Was there room in the evidence for conflicting reasonable inferences? Or, as it has been many times put by this court, Was the evidence so clear and convincing one way as to leave no room for unbiased and impartial minds to come to more than one conclusion; or so clear and conclusive as not to admit reasonably of any opposing inferences in unbiased and unprejudiced minds? *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573.

It matters little, if at all, which of the foregoing phrasings is used. They all mean the same thing though, it is true, one is liable to be so strongly impressed with one way as to be disposed to criticise or condemn, others. That may come from the stronger conviction respecting manner of stating the principle than respecting the real logic of the principle itself.

Strictly speaking, the inquiries suggested involve consideration of matter of fact though it is often spoken of as if solely matter of law. *Powell v. Ashland I. & S. Co., supra.* It does not seem difficult to grasp the idea that the question—Does the evidence as matter of law establish the fact one way so conclusively as to exclude every reasonable ground for finding it to be the other? requires one to go back to the question of whether there is room in the evidence for jurors to reasonably differ. That in the broad sense is matter of fact which the court must decide as has been frequently suggested. In every jury trial the court by the very act of submitting the case to the jury impliedly decides there is room in the evi-

dence for conflicting reasonable inferences. There is no legitimate way of escape from the duty of deciding such a question when properly challenged in respect thereto. It is purely a judicial matter. In dealing with it, properly, there can be no usurpation of jury functions. Such functions are well defined. They do not deal with any situation except those where there is some room for reasonable doubt as to the truth of controverted matters of fact. Up to that point the trial judge is supreme. Beyond that the jury takes hold. In the latter field the jury draw the proper inference from the reasonable conflicts. In the former the judge declares the one reasonable inference and, as matter of law, because in contemplation of law when the truth is ascertained by that test it is truth infallible so far as our judicial system goes.

We are not unmindful of the fact that there is a sentiment, indulged in by some, that, since the propositions under discussion involve whether minds may reasonably differ, it is illogical to decide in the negative where men confessedly up to the plane of ordinary comprehension do in fact honestly differ; that it involves the idea, from the viewpoint of those on one side, that those on the other are either not of ordinary comprehension or do not reasonably differ. Such indulgence in such sentiment loses sight of the fact that judges must decide judicial questions including those under discussion. They are under solemn oath to do so. They cannot fail in performance according to their honest convictions without violating such oaths and manifesting unfitness for the great trust reposed in them. While the result at times may be that the judgment of one has, from a technical viewpoint, a cast of convicting an equal of not reasonably differing—of concluding contrary to rules of common sense—in the broad field of judicial work judicial instrumentalities rarely if at all have any such idea. But the situation giving rise to such cast or tending that way in the mind of anybody should, as it doubtless does, strongly constrain to prevent

such result though that cannot legitimately go to the extent of justifying or excusing one in deciding contrary to his own firm convictions. To do so would violate one's oath of office and the plainest principles of judicial duty.

So mere fixed differences of opinion even among judicial peers as to the law or as to the facts cannot necessarily stand in the way of a decision that there is no reasonable ground for such differences. That is evident in decisions by divided courts in all jurisdictions and in all ages. It is a part of our system which courts have no right to change. It calls loudly, and ought always efficiently, on those charged with official duties to agree if they reasonably can without violating their convictions, but when that cannot be done to each observe strictly his official obligation and however forcibly he may present his views to have due regard for the opinions of others, including that of the trial judge who has always the best opportunity to determine any matter dependable upon human testimony. ·

So the trial court, necessarily, determined the question in this case of whether there was room in the evidence for unbiased minds to reasonably differ in regard to the truth respecting the vital issues. It matters not that the jury might have come to a different conclusion. It was not within their function to pass on that question as we have seen.

The question as it comes here is not presented as an original one. It might appear from the printed record alone that a different decision below could well have been reached and yet an affirmance follow, since to warrant a reversal it must appear that the decision complained of is clearly wrong. *McCune v. Badger,* 126 Wis. 186, 105 N. W. 667. As there said, "the law rendering it obligatory to decide the question of fact upon a motion for a nonsuit or a verdict in view of the consideration due the trial court's decision gives dignity thereto entitling it to prevail, unless upon the record it appears to be clearly wrong." So in case of some reasonable

doubt in such a situation the obscurity should be resolved in favor of sustaining the court below.

Under the foregoing rule and numerous adjudications of this court in similar situations to the one we have here, can it fairly be said the trial court was manifestly wrong in holding that there was no actionable negligence in failing to guard the cylinder of the planer at the back side thereof out of reach, as it was, of the operator in the ordinary course of his duties, and reached only by his actually going somewhat out of his way and putting his hand into the zone of the revolving knives,—into a place where no one had instructed him to interfere and into which he had never seen any one else put his hand or attempt to do anything of the nature he attempted to do? It has been frequently held that the duty to fence or guard does not extend to machinery features so located that one would have to depart from any way which could reasonably be expected in order to invade the region of danger from it. *Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153; *Miller v. Kimberly & Clark Co.* 137 Wis. 138, 118 N. W. 536; *Houg v. Girard L. Co.* 144 Wis. 337, 129 N. W. 623.

Again, can we well say the trial court was clearly wrong in holding that, notwithstanding the testimony of plaintiff as to his ignorance of there being revolving knives in the region where he put his hand, that he must have known of it, or ought to have known of it, especially in view of the many situations of similar character where it has been held that similar circumstances so clearly overcome the evidence of the claimant as to render it of so little probative force as not to create a conflict for solution by a jury. *Dougherty v. West Superior I. & S. Co.* 88 Wis. 343, 60 N. W. 274; *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615, 71 N. W. 1034; *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 178; *Horn v. La Crosse Box Co.* 123 Wis. 399, 101 N. W. 935; *Horn v. La Crosse Box Co.* 131 Wis. 384, 111 N. W. 522; *Gardner v. Paine L.*

*Co.* 123 Wis. 338, 101 N. W. 700; *Schmitt v. Hamilton Mfg. Co.* 135 Wis. 117, 115 N. W. 353.

Those and many other cases are each so strikingly like this one that either might be referred to seemingly as a ruling authority. In the aggregate they come as near establishing a definite principle governing such cases as this, as one could expect to have in the law of negligence; dealing as it does with situations each differing, at least slightly, from the other.

In all or nearly all the cited cases the same feature will be found which we have here and upon which appellant most relies, viz.: the positive testimony of the claimant that he did not know there was a rapidly revolving cutting or other instrumentality creating danger in the zone where he put his hand. In each it was insisted that such story, positively told and persisted in, raised a jury question. In each it was held that the story was not in reason believable and so did not create a conflict with the circumstances showing that the witness in fact did know, or at least as a man of ordinary common sense he ought to have known, of the danger he encountered. In these cases it is stated over and over again, in one form or another, that when all reasonable probabilities arising from physical situations, natural laws, or common knowledge of ordinary persons, are so clearly one way as to leave no reasonable ground in the minds of reasonable men of ordinary intelligence to have any fair doubt about the matter, evidence from the mouth of one or more witnesses contrary to the obvious truth does not create a conflict for solution by a jury. Sometimes that doctrine will be found phrased one way and sometimes another. All mean the same and all convey the same idea as will be appreciated upon examining the matter from the viewpoint of the logic of the principle itself. The greatest danger of its not being legitimately applied lies in obscurity being created by favoring one set way of phrasing it to the extent of doubting another meaning just the

same and perhaps more easily understood by many, if not the majority, having to do with the matter. Truth does not change its character by mere changes in groupings of words used to express it for its immortality is inherent. One may picture it one way and another by a different method according to differing mentalities, temperaments, and conceptions. The pictures may differ in refinement but be, just the same, pictures of the one infallible thing.

We must face the situation here that plaintiff was of mature age and of ordinary intelligence in full possession of his faculties. That all appears affirmatively, but if that were not so, certainly there is no evidence to show that respondent had any reasonable ground to think otherwise. It is hardly reasonable, we must conclude, to suppose that such a man could witness, hour by hour, such results as were produced as he fed the planer, the accomplishment taking place in the narrow zone of three inches or so accompanied by rotary motion produced by understood attachments of the machine, by noise like unto that of a threshing machine cylinder, the trembling of the machine and forceful hurling of shavings over the pressure bar from the point where the board emerged—without knowing that in the narrow place there was a cutting mechanism working with great power. Is it clear then that the trial court was wrong in holding appellant's story to be unbelievable; that when he put his hand over and against the back side of the cutting cylinder—up to within a few inches of where he was accustomed, when standing in front of the machine as the end of a board disappeared under the chip breaker to hear the loud noise made by the cutting head followed immediately by shavings flying with force from out the very place where he put his hand—he did not know there was a cutting mechanism in that region with which his hand was liable to come in contact? It is considered that such question must be answered in favor of respondent.

Counsel for appellant took a wrong view of the case in supposing that the test of whether appellant's story is believable is whether any man under any circumstances could be reasonably held not to know of a cutting mechanism such as existed in this case, creating a danger zone in which his hand would be injured if placed there. Not so. The evidence must be considered from the viewpoint of respondent before the accident. There was nothing indicating that appellant was not in possession of all his faculties or not of full age and of ordinary common sense for one of his age. Is it reasonable to suppose that such a man under the circumstances in which appellant was placed, could, in the exercise of ordinary care, be ignorant of there being a danger zone in such a place as that where appellant reached with his hand, created by some cutting mechanism appropriate to produce the results witnessed to the boards as they passed through such zone? That is the question. We are constrained to the conclusion, there is no fair ground for overruling the decision of the trial court in respect thereto.

There are a number of other errors discussed in the briefs of counsel for appellant which need not be treated. If they were all resolved in appellant's favor it would not make any difference with the result. Therefore, we pass them with this brief notice.

Aside from a somewhat lengthy discussion of a few elementary principles which the writer at least thought might well be treated as they have been, though they are a part of the "a b c," so to speak, of our judicial system, we have given most attention to the question of whether the trial court was clearly wrong in deciding that appellant was guilty of contributory negligence as a matter of law. However, we find quite as much difficulty in concluding that there was clear error in holding, as matter of law, the evidence was insufficient to prove respondent was actionably negligent.

*By the Court.*—The judgment is affirmed.

The following opinion was filed April 1, 1911:

WINSLOW, C. J. (*concurring*). I agree that the trial
judge was right in holding that under the evidence in this
case the plaintiff was conclusively shown to have been guilty
of contributory negligence. This conclusion necessitates af-
firmance of the judgment and renders it unnecessary to pass
upon any other questions.

I wish to add a few words concerning one feature of the
opinion. I agree entirely with the proposition that when
there is a difference of opinion among the justices of this
court on the question whether there is sufficient evidence in
a given case to require submission of the case to a jury the
opinion of the majority must prevail. If the minds of the
majority are convinced that there is no evidence upon which
a verdict could stand, they are in duty bound to say so, de-
spite the fact that a minority of their brethren take the oppo-
site view. This latter fact should certainly cause the ma-
jority to proceed with scrupulous care and examine and
re-examine their premises and conclusions to see if they may
not be wrong, but when that has been conscientiously done,
if their minds are still convinced that their original conclu-
sions are right, it is their bounden duty to say so and decide
the case in accordance with their convictions. In no other
way can they properly discharge their official duty. Each
of them has taken an oath to discharge the duties of his of-
fice to the best of *his* ability, not to the best of some other
person's ability. He is responsible to his own mind and con-
science, and he must follow their dictates if he would be faith-
ful to his great trust.

While I regard this principle as absolutely unassailable, I
regard it as unfortunate in such a situation to use the expres-
sion that no reasonable mind can come to a different conclu-
sion, or that different minds cannot reasonably come to dif-
ferent conclusions, or that there is no reasonable inference

which can be drawn the other way, or any equivalent expression. This is not a new idea with me. I expressed my dislike for the phrase under such circumstances in my dissenting opinion in the case of *Agen v. Metropolitan L. Ins. Co.* 105 Wis. 217, 80 N. W. 1020, and I have seen no reason to change the view there expressed.

The difficulty is that there is no infallible test or standard of what is reasonable and what is not reasonable. No two minds are alike. A conclusion which seems reasonable to one man may seem absolutely unreasonable to another, depending on differences in temperament, education, environment, and experience, yet both men may be men of high and unquestioned intellectual power. There is, of course, a very large domain where the conclusion from a given state of facts is so obvious that no sane mind could honestly reach any other. Under such circumstances it is correct to say that there is but one conclusion which is reasonable. But, on the other hand, there is a large domain of what may be called cases on or near the border line; cases where on the same facts two equally honest and able minds would disagree on the question whether there was any jury question in the case. Cases where there is a difference of opinion among the justices of this court as to the conclusion which may properly be drawn from the facts are in this latter domain, in my judgment. It is entirely proper and in fact necessary for the majority in such cases to decide the case upon their own judgment, but it is unfortunate, and it seems to me inaccurate, to say that no reasonable mind can think otherwise. It is sufficient and entirely accurate to say that the court (for the majority constitutes the court in case of division) is of opinion that there is no evidence which would warrant the submission of the case to the jury.